Filed 8/6/21  In re M.W. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re M.W., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. L.W., Defendant and Appellant. | A161338 (San Francisco County Super. Ct. No. JD20-3119) |

L.W. (Mother) appeals from the juvenile court's jurisdictional and dispositional orders in this dependency proceeding regarding her son, M.W. (Minor).  She contends there was insufficient evidence to support the court's finding that Minor was at substantial risk of harm and its removal of Minor from her custody.  We modify the September 15, 2020 minute order to reflect the court's findings, and otherwise affirm.

**BACKGROUND**

In May 2020, the San Francisco Human Services Agency (Agency) received a referral for newborn Minor after Mother tested positive for methamphetamines at the time of his birth.  The Agency filed a petition alleging Minor was within the jurisdiction of the juvenile court under Welfare

and Institutions Code section 300, subdivisions (b)(1) and (g).[1]  As to subdivision (b)(1) (section 300(b)(1)), the petition alleged Minor was at substantial risk of harm due to Mother's substance abuse and mental health issues, as well as substance abuse and domestic violence issues involving Minor's father.  It also alleged Minor was at risk of further neglect because Mother refused medical treatment for the baby:  after doctors noticed signs of withdrawal, she did not allow the doctors to complete any newborn screenings, assess the baby for withdrawal, or take him to the neonatal intensive care unit.  The social worker reported that she had spoken with Mother at the hospital, and Mother had denied ever using drugs.  Mother attributed her positive drug test result to her having given Narcan to a friend who overdosed, as some substances had rubbed off on her hands.  A hospital doctor stated that such a possibility was "unlikely."  Another hospital doctor noted that Minor had signs of withdrawal in the form of "excessive jitteriness in his limbs and a high-pitched cry."  Mother denied that Minor was experiencing any withdrawal symptoms, contending Minor was crying and jittery because the doctor woke him up and the room was cold.  L.W.'s mother (Grandmother) reported that Mother had a history of substance abuse, and she believed Mother was currently abusing drugs because Mother had "dark circles under her eyes" and "did not appear 'normal.' "

At the contested detention hearing, the court found a prima facie case had been made that Minor came within section 300, there was a substantial danger to Minor's physical health, and there were no reasonable means to protect his health absent removal; it ordered Minor detained.

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

In its June 10, 2020 jurisdiction/disposition report, the Agency recommended out-of-home placement for Minor. Minor's caretaker noted that he was a " 'good baby' " and "easy to care for." The report stated that Mother had not made any contact with the Agency. Grandmother indicated that Mother's "drug of choice" was methamphetamines, and that Mother continued to use methamphetamines. Mother had two disorderly conduct convictions for intoxication. The August 20 and 25, 2020 addenda to the report stated that Mother's whereabouts were unknown, and she had not responded to the social worker's attempts to contact her.

At the contested jurisdiction and disposition hearing, emergency response worker K. Macklin testified regarding the information reported to her by the hospital doctors and Grandmother. Social worker C. Chan testified that there was still no contact with Mother despite repeated attempts to reach her. The court declared dependency. It found true the allegations under section 300(b)(1) that Minor was at risk of abuse and neglect due to Mother's substance abuse issues, as evidenced by the positive drug test result, as well as Grandmother's report of Mother's current and past drug use (count B1(A)–(C)). It also found true the allegation that Minor was at risk of neglect because Mother refused medical treatment for the baby, and it added Minor's father to that allegation (count B3).

## DISCUSSION

Mother argues that the court's section 300(b)(1) jurisdictional finding and removal of Minor from her custody are not supported by substantial evidence. As to the jurisdictional finding, Mother acknowledges that Minor's father has not appealed the court's jurisdictional order, and the unchallenged finding against him is sufficient to support the court's jurisdictional order. (*In re A.R.* (2014) 228 Cal.App.4th 1146, 1150 ["Because the juvenile court

3

assumes jurisdiction of the child, not the parents, jurisdiction may exist based on the conduct of one parent only. As a result, we need not consider jurisdictional findings based on the other parent's conduct."].) Mother requests, however, that we nonetheless consider her challenge. We retain the discretion to consider the merits of a parent's appeal where, as here, "the jurisdictional finding serves as the basis for dispositional orders that are also challenged on appeal," and we will exercise our discretion to do so. (*Ibid*.)

We review the juvenile court's jurisdictional and dispositional findings for substantial evidence. (*In re Alexzander C.* (2017) 18 Cal.App.5th 438, 446.) "In making this determination, we review the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders." (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688–689.) "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.) Mother bears the burden to show that the evidence was not sufficient to support the findings and orders. (*In re Alexzander C.*, at p. 446.) Substantial evidence "means evidence that is 'reasonable, credible and of solid value; it must actually be substantial proof of the essentials that the law requires in a particular case.' " (*In re E.D.* (2013) 217 Cal.App.4th 960, 966.)

A.

Section 300(b)(1) allows the juvenile court to take jurisdiction when there is a substantial risk that the child will suffer serious harm as a result of the parent's failure or inability to adequately supervise or protect the child, or by the parent's inability to provide regular care for the child due to the parent's substance abuse. Although there must be proof that the child is at

4

risk of harm at the time of the jurisdiction hearing, "the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child." (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383.) The court may consider past events when determining whether a child needs the court's protection, because "[a] parent's past conduct is a good predictor of future behavior." (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.)

Mother challenges the section 300(b)(1) jurisdictional finding here by arguing her single positive drug test was insufficient to show she had "ongoing" substance abuse issues, and Minor's jitteriness and crying was insufficient evidence to show he was born under the influence or going through withdrawals. As a preliminary matter, Mother fails to address the totality of evidence that supported the court's section 300(b)(1) finding. The court determined Mother's substance abuse issues were evidenced not only by the positive drug test result (count B1(A)), but also by Grandmother's reports that Mother was currently using drugs (count B1(B)) and had a history of drug use (count B1(C)).[2] Considered together, this evidence was substantial proof that Minor was at risk of abuse and neglect due to Mother's substance abuse issues.

Moreover, Mother relies on *In re J.A.* (2020) 47 Cal.App.5th 1036 to support her position regarding the insufficiency of her single drug test result. Such reliance is misplaced. In that case, the appellate court determined there was insufficient evidence that a pregnant mother's use of medical

_____

[2] The September 15, 2020 minute order does not include the following findings by the court: finding count B1(B)–(C) as true; finding the first sentence of count B1(D) as true as to Mother, and finding the second sentence of count B1(D) as stricken; finding count B4 and B5 as stricken; and amending count B3 to include Minor's father. We modify the minute order to reflect these findings.

5

marijuana gave rise to a substantial risk of harm. (*Id.* at p. 1048.) It rejected the agency's reliance on the statutory presumption that "prenatal exposure to drugs creates a presumption of dependency." (*Ibid.*, citing § 355.1.) *In re J.A.* clarified, however, that application of the presumption "when a child is 'diagnosed as being born under the influence of a dangerous drug,' such as morphine and methamphetamine, is clear." (*Id.* at p. 1049.) Here, Mother tested positive for methamphetamines when Minor was born, and a hospital doctor noted that Minor had signs of withdrawal.

Mother's other cited cases are similarly distinguishable. *In re L.C.* (2019) 38 Cal.App.5th 646, 649, 652 involved a six-year-old child whose guardian had used methamphetamines, but then stopped and had three clean drug tests before the jurisdictional hearing. *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1004 involved an 11-year-old child whose mother had abused methamphetamines nine years before the petition was filed, and had three months of clean drug tests before the jurisdictional hearing. Unlike those cases, there is no indication here that Mother did any further drug testing after her positive result. To the contrary, Grandmother stated that Mother was *continuing* to abuse methamphetamines at the time of the June 10, 2020 report, which corroborated the other evidence of Mother's substance abuse issues.

In sum, Mother failed to satisfy her burden to show the court's section 300(b)(1) jurisdictional finding was not supported by substantial evidence.

## B.

"A removal order is proper if based on proof of parental inability to provide proper care for the child and proof of a potential detriment to the child if he or she remains with the parent." (*In re N.M.* (2011) 197 Cal.App.4th 159, 169.) The juvenile court may consider both present

6

circumstances as well as the parent's past conduct in determining whether removal is appropriate. (*Id.* at p. 170.) "Before the court issues a removal order, it must find the child's welfare requires removal because of a substantial danger, or risk of danger, to the child's physical health if he or she is returned home, and there are no reasonable alternatives to protect the child." (*Ibid.*) While the court has broad discretion to determine what is in the child's best interests and to fashion a dispositional order, there must be "clear and convincing evidence that removal is the only way to protect the child." (*Id.* at pp. 170–171.)

Mother challenges the juvenile court's removal finding here by arguing there was insufficient evidence that Minor would face substantial danger if returned to her custody. Specifically, Mother points to her representation at the jurisdiction and disposition hearing that she was "amenable" to certain services, and the report from Minor's caregivers that he was "easy to care for." We are not persuaded. In the four months before that hearing, Mother did not make *any* efforts to communicate with the Agency or engage in services. According to Grandmother, Mother was continuing to abuse methamphetamines during that time. Minor's reported status in his out-of-home placement did not dispel the substantial danger posed by Mother's ongoing substance abuse issues and reinforced by her total lack of participation in the case plan. Mother failed to satisfy her burden to show the court's removal finding was not supported by substantial evidence.

## DISPOSITION

We modify the September 15, 2020 minute order to reflect the court's findings on counts B1(A)–(C) and B3 as true; the court's finding on the first sentence of count B1(D) as true as to Mother and the second sentence of count B1(D) as stricken; the court's findings on counts B2, B4, B5, G1, and

7

G2 as stricken; and to clarify that the court amended count B3 to include Minor's father. The juvenile court is directed to amend the minute order in those respects. The orders are otherwise affirmed.

                                            _____

                                            Rodriguez, J.*

WE CONCUR:

_____

Needham, Acting P. J.

_____

Burns, J.

A161338

---

\* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.